**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MIRZO ATADZHANOV,**

**Plaintiff,**

**vs.**

**9:25-CV-786 (MAD/MJK)**

**RICHARD MARREN, JOSEPH MARSHALL, and WENDI CROCKER,**

**Defendants.**

---

**APPEARANCES:** **OF COUNSEL:**

**MIRZO ATADZHANOV**
22-B-0976
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants

**RACHAEL OUIMET, AAG**

**Mae A. D'Agostino, U.S. District Judge:**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Mirzo Atadzhanov ("Plaintiff") commenced this action *pro se* on June 18, 2025. *See* Dkt. No. 1. After this Court reviewed the sufficiency of Plaintiff's complaint and dismissed some of his claims, *see* Dkt. No. 7, Plaintiff filed an amended complaint on September 15, 2025, *see* Dkt. No. 15. Upon review of the amended complaint, this Court permitted claims to proceed against three people: Corrections Officer Richard Marren, Corrections Officer Joseph Marshall, and

Hearing Officer Wendi Crocker. *See* Dkt. No. 19. The surviving claims are: (1) First Amendment retaliation as to Marren; (2) First Amendment retaliation as to Marshall; and (3) a due process claim against Crocker. *See id.* at 7.

On February 13, 2026, Marren and Marshall ("Defendants") filed a pre-answer partial motion for summary judgment and partial motion to dismiss. *See* Dkt. No. 29. They argue that Plaintiff failed to exhaust his administrative remedies as to the First Amendment retaliation claims. *See* Dkt. No. 29-1 at 8-12. They also argue that the retaliation claims should be dismissed for failure to state a claim.[1] *See id.* at 12-16. Plaintiff opposed the motion on April 22, 2026, *see* Dkt. No. 36, and Defendants replied on May 11, 2026, *see* Dkt. No. 38.

On July 17, 2026, Magistrate Judge Mitchell Katz issued a Report-Recommendation on Defendants' motions. *See* Dkt. No. 42. Therein, he recommended denying the partial motion for summary judgment and granting the partial motion to dismiss. *See id.* at 28. Plaintiff filed objections to the Report-Recommendation on July 27, 2026. *See* Dkt. No. 44. The same day, he filed a motion to appoint *pro bono* counsel. *See* Dkt. No. 43.

For the following reasons, the Court adopts the Report-Recommendation in part and rejects it in part. The Court also denies Plaintiff's motion to appoint counsel with leave to renew.

## II. BACKGROUND

For a summary of the relevant facts, the parties are referred to Magistrate Judge Katz's Report-Recommendation, *see* Dkt. No. 42 at 2-5, and this Court's Decision and Order dated October 27, 2025, *see* Dkt. No. 19.

## III. DISCUSSION

[1] Defendants do not make arguments concerning the due process claim. Defendant Crocker filed an answer to that claim on February 13, 2026. *See* Dkt. No. 30.

**A. Report-Recommendation**

***1. Standard of Review***

In reviewing a report-recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "As to a dispositive matter, any part of the magistrate judge's recommendation that has been properly objected to must be reviewed by the district judge *de novo*." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 358 (2d Cir. 2025) (citations and internal quotation marks omitted). A proper objection must be timely, specific, and "not raise new arguments not previously made before the magistrate judge." *Id.* at 359 (citations omitted). When a party does not object, or do so properly, the court reviews the magistrate judge's recommendations for clear error. *See id.* at 359-60.

*Pro se* litigants' filings should "'be liberally construed'" and "'held to less stringent standards'" than attorney-drafted submissions. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Accordingly, this Court must construe Plaintiff's filings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and emphasis omitted).

Magistrate Judge Katz set forth the applicable legal standards for motions to dismiss and for summary judgment, *see* Dkt. No. 42 at 6-9, the parties did not object to those portions of the Report-Recommendation, and the Court finds no clear error therein. The parties are therefore referred to the Report-Recommendation for a summary of those standards.

***2. Plaintiff's Objections***

Plaintiff objects only to Magistrate Judge Katz's recommendations on the merits of the retaliation claims. *See* Dkt. No. 44. Specifically, he challenges the Report-Recommendation's

finding that Plaintiff's amended complaint fails to allege adverse action by Defendant Marren or Defendant Marshall. *See id.* Plaintiff argues that he "demonstrated all elements" of the retaliation claims and reiterates that misbehavior reports made by Defendants Marren and Marshall were adverse actions. *Id.* at 1-4. Plaintiff does not object to Magistrate Judge Katz's recommendations on exhaustion. *See* Dkt. No. 44.

Accordingly, the Court reviews Magistrate Judge Katz's recommendations on the merits of the retaliation claims *de novo*. It reviews the rest of the Report-Recommendation for clear error.

***3. Motion for Summary Judgment***

Defendants move for partial summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies for the retaliation claims.[2] *See* Dkt. No. 29-1 at 8-12. As Magistrate Judge Katz summarized, three misbehavior reports are relevant to this analysis: (1) a report by Defendant Marren on February 16, 2024, regarding Plaintiff's alleged tampering with a sink in his cell; (2) a report by Defendant Marshall on February 16, 2024, regarding Plaintiff's hanging of a sheet in his cell; and (3) a report by Defendant Marren on March 11, 2024, regarding a broken crochet hook found in Plaintiff's cell. *See* Dkt. No. 42 at 3-4. Plaintiff alleges that those

---

[2] The Court acknowledges Magistrate Judge Katz's recommendation to consider exhibits that Plaintiff attached to his original complaint but omitted from his amended complaint. *See* Dkt. No. 42 at 10-18. The Court understands this recommendation as applying only to the summary judgment portion of this matter. *See id.* at 16 ("To rule on Marren's summary judgment motion without considering these documents would be a harsh application of technical rules that would impair [Plaintiff's] right to special solicitude") (citation and internal quotation marks omitted). It is proper for the Court to consider exhibits outside the pleadings when deciding a summary judgment motion. *See Cisse v. Bliss*, No. 9:23-CV-697, 2024 WL 5378988, *9 (N.D.N.Y. Nov. 15, 2024), *R. & R. adopted*, 2025 WL 97683 (N.D.N.Y. Jan. 15. 2025) (crediting exhibits attached to the incarcerated *pro se* plaintiff's opposition papers and determining that the defendants "[had] not met their burden . . . to demonstrate that there [were] no genuine disputes of material fact regarding the exhaustion of [the p]laintiff's administrative remedies"). Therefore, at this juncture, the Court declines to analyze in detail whether the exhibits attached to the initial complaint are integral to the amended pleading. It resolves the partial summary judgment motion based on exhibits submitted with the parties' briefing.

reports were retaliation for a grievance he filed against Defendants in August 2023 for interrupting Plaintiff while he was praying.[3] *See* Dkt. No. 15 at 15-16.

Defendants assert that Plaintiff filed a grievance on February 27, 2024, which challenged the February 2024 misbehavior reports. *See* Dkt. No. 29-1 at 11. They aver that the grievance was dismissed on March 26, 2024, and Plaintiff was notified via privileged correspondence. *See id.* Defendants argue that despite having seven days to appeal the dismissal, Plaintiff failed to do so. *See id.* They also assert that their records do not show a grievance was filed regarding the March 2024 report. *See id.* at 12. Defendants filed supporting declarations from individuals employed by the New York State Department of Corrections and Community Supervision who handle inmate grievances. *See* Dkt. Nos. 29-4 to 29-6.

In opposition, Plaintiff appears to argue that he attempted to appeal unfavorable decisions on his grievances but never received a response. *See* Dkt. No. 36 at 15-17. Plaintiff filed a series of handwritten exhibits indicating attempts to appeal a grievance associated with the August 2023 prayer incident. *See* Dkt. No. 37-1 at 23-24. He also filed what appears to be a handwritten grievance dated January 16, 2025, which discusses the three misbehavior reports, *see id.* at 25-35, and two handwritten letters dated February 10, 2025, and March 12, 2025, stating that he received no response and was appealing the grievance, *see id.* at 36-37. Finally, Plaintiff filed what appears to be a handwritten grievance regarding just the February 2024 misbehavior reports, *see id.* at 38-45, and letters dated March 13, 2024, and April 12, 2024, indicating that he would appeal

[3] In at least one place, the amended complaint states that the prayer incident happened in August 2024. *See* Dkt. No. 15 at 5. Because Plaintiff alleges that Defendants' actions in February and March 2024 were retaliation for Plaintiff's grievance regarding the prayer incident, the Court assumes this was error. *See* Dkt. No. 36 at 11 (stating in Plaintiff's opposition to Defendants' motion that the prayer incident happened on August 29, 2023); Dkt. No. 44 at 2 (stating the same in Plaintiff's objections to the Report-Recommendation).

the grievance after receiving no response, *see id.* at 46-47. He therefore contends that he properly exhausted his administrative remedies. *See* Dkt. No. 36 at 16.

In reply, Defendants maintain that their records show Plaintiff's failure to exhaust. *See* Dkt. No. 38 at 4-8. They argue that "[w]ithout affirmative evidence that Plaintiff filed . . . or attempted to file an appeal[,] . . . Plaintiff cannot now rely on speculation or conclusory assertions to excuse his failure to complete the process." *Id.* at 5. They also contend that to the extent Plaintiff argues the grievance process was unavailable to him, that argument is conclusory and cannot defeat summary judgment. *See id.* at 6-8.

Pursuant to the Prison Litigation Reform Act ("PLRA"), New York inmates must exhaust a three-step grievance process before they can bring a lawsuit with respect to prison conditions. *See Witherspoon v. Jones*, No. 9:24-CV-296, 2026 WL 1396585, *3 (N.D.N.Y. May 19, 2026). The process begins with filing a grievance, which "must provide prison officials with notice of the misconduct from which [the incarcerated individual] seeks redress so that the prison may take appropriate responsive measures." *Id.* (citation and internal quotation marks omitted). "An inmate's failure to exhaust is excusable if administrative remedies were unavailable." *Id.* (citing *Kearney v. Gebo*, No. 9:15-CV-253, 2017 WL 61951, *1 (N.D.N.Y. Jan. 4, 2017)); *see Ross v. Blake*, 578 U.S. 632, 635-36 (2016). An administrative remedy may be considered unavailable if: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) if it is part of "an administrative scheme . . . so opaque that it becomes, practically speaking, incapable of use[;]" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44 (citations omitted).

As explained above, Plaintiff's exhibits suggest that he filed grievances concerning the three misbehavior reports and attempted to appeal them after believing the grievances went ignored.[4] *See* Dkt. No. 37-1 at 25-47. Those exhibits raise questions of material fact as to whether Plaintiff exhausted his administrative remedies. *See Castro v. Heath*, No. 9:12-CV-1250, 2013 WL 5354241, *6-7 (N.D.N.Y. Sept. 23, 2013) (recommending denial of the defendants' pre-discovery summary judgment motion because the plaintiff provided sworn statements that he pursued grievances which went ignored); *Cisse v. Bliss*, No. 9:23-CV-697, 2024 WL 5378988, *9 (N.D.N.Y. Nov. 15, 2024), *R. & R. adopted*, 2025 WL 97683 (N.D.N.Y. Jan. 15. 2025) (recommending denial of the defendants' summary judgment motion because the plaintiff provided "documents purporting to be a grievance" that raised a dispute of material fact as to exhaustion). Importantly, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation and internal quotation marks omitted). Accordingly, the Court finds no clear error with Magistrate Judge Katz's recommendation that Defendants' motion for partial summary judgment be denied.

Magistrate Judge Katz also recommended giving the parties an opportunity to conduct discovery on the exhaustion issue instead of immediately ordering an exhaustion hearing.[5] *See*

---

[4] Although Defendants point out that Plaintiff failed to respond to their statement of material facts in a manner that complies with this Court's Local Rules, *see* Dkt. No. 38 at 3-4, the Court acknowledges that Plaintiff is due special solicitude as a *pro se* litigant, *see Castro*, 2013 WL 5354241, at *5. For this reason, and because Plaintiff responded to Defendants' motion with evidence sufficient to raise a dispute of material fact, the Court declines to summarily deem Defendants' statements of fact admitted. *See id.* The Court also notes that Defendants make no arguments regarding the timeliness of the purported January 2025 grievance.

[5] Magistrate Judge Katz acknowledged the Supreme Court's recent holding that "parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." *Perttu v. Richards*, 605 U.S. 460, 468 (2025); *see* Dkt.

Dkt. No. 42 at 19. The Court sees no clear error with that recommendation. *See Simpkins v. Henderson*, No. 9:24-CV-928, 2026 WL 2042993, *2 (N.D.N.Y. July 15, 2026); *see also Hawn v. Williams*, No. 9:24-CV-1137, 2025 WL 2548738, *7 (N.D.N.Y. July 10, 2025), *R. & R. adopted*, 2025 WL 2424309 (N.D.N.Y. Aug. 22, 2025). Defendants' motion for summary judgment on the exhaustion issue is denied with leave to renew after discovery.

***4. Motion to Dismiss***

To plead a *prima facie* case of First Amendment retaliation, an incarcerated plaintiff must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Crider v. McGrath*, No. 9:25-CV-629, 2026 WL 550006, *12 (N.D.N.Y. Feb. 27, 2026) (citation and internal quotation marks omitted); *see Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Defendants argue that Plaintiff's retaliation claims should be dismissed on the merits because the amended complaint fails to allege adverse action and causal connection. *See* Dkt. No. 29-1 at 12-16. They do not contest whether Plaintiff engaged in protected activity. *See id.* at 13 n.3; Dkt. No. 42 at 24 n.7; *see also Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (characterizing "use of the prison grievance system" as a protected

---

No. 42 at 20-21. In a separate case involving an incarcerated plaintiff's constitutional rights, Judge Anthony Brindisi noted that the "precise impact" of *Perttu* "is yet to be understood." *Hawn*, 2025 WL 2424309, at *2. No party has argued that the exhaustion issue is "intertwined" with the merits of Plaintiff's retaliation claims. The facts of this case are also distinct from those in *Perttu*, where the defendant allegedly destroyed the plaintiff's grievances and threatened to kill him if he filed others. *See Perttu*, 605 U.S. at 464. Here, the alleged retaliation stems from the defendants' filing of misbehavior reports, rather than interference with Plaintiff's grievances. *See Coleman v. Hamilton*, No. 9:24-CV-455, 2025 WL 2731047, *2 (N.D.N.Y. Sept. 25, 2025) (distinguishing *Perttu* on similar grounds). The Court agrees with Judge Brindisi that "[a]t the very least, the application of *Perttu*'s 'intertwine[ment]' rule would benefit from some discovery to better frame whether the question of exhaustion in this case can be separated from the merits of [P]laintiff's claims." *Hawn*, 2025 WL 2424309, at *2 (citing *Hubbert v. Monroe Cnty. Sheriff's Dep't*, No. 22-CV-1009, 2025 WL 2157982, *3 (W.D.N.Y. July 30, 2025)).

activity). In opposition, Plaintiff argues that the misbehavior reports were adverse actions. *See* Dkt. No. 36 at 25-27. He also broadly contends that the amended complaint pleads causation. *See id.* at 27-29. In reply, Defendants argue that "Plaintiff fails to establish a claim for retaliation because the issuance of [the] misbehavior reports was for legitimate reasons." Dkt. No. 38 at 8.

***a. Adverse Action***

Magistrate Judge Katz recommended dismissing both retaliation claims because Plaintiff "failed to plausibly allege an adverse action." Dkt. No. 42 at 22. As explained above, Plaintiff objected to this portion of the Report-Recommendation and argues that he pleads retaliation by describing the misbehavior reports in detail. *See* Dkt. No. 44 at 1-4.

The Second Circuit has held that allegations of filing false misbehavior reports may support an inference of adverse action at the pleading stage. *See Gill*, 389 F.3d at 384. In *Gill*, the *pro se* plaintiff alleged that prison personnel retaliated against him "for filing grievances and complaints concerning their behavior[.]" *Id.* at 380. He alleged that they submitted false misbehavior reports against him, which "resulted in his placement in prison 'keeplock.'" *Id.* The Second Circuit vacated the district court's dismissal of the plaintiff's retaliation claim, partly because the filing of false misbehavior reports and placement in a more punitive setting "would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process and the courts[.]" *Id.* at 384; *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 373 (2d Cir. 2010) (finding the "adverse action" prong satisfied where the plaintiff alleged that the defendants filed a misbehavior report that resulted in special confinement); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (recognizing false misbehavior reports in response to an inmate's grievance as an adverse action).

Plaintiff's amended complaint alleges that Defendants Marren and Marshall were among the individuals who interrupted his prayer. *See* Dkt. No. 15 at 4. It also alleges that Plaintiff filed a grievance regarding that incident. *See id.* at 5. The amended complaint specifically states that he was served with misbehavior reports in February 2024, with one written by Defendant Marren and the other written by Defendant Marshall. *See id.* It further alleges that Defendant Marren issued another misbehavior report against Plaintiff the following month. *See id.* at 7. According to the amended complaint, a hearing was held on some or all of Plaintiff's misbehavior reports. *See id.* Plaintiff alleges that he "was found guilty on both charges and was given 180 days of SHU[6] time, loss of privileges including visits and especially trailer-visits which Plaintiff was hoping to get as he completed the ART (anger restraint technique) program." *Id.* at 10.

A liberal reading of the complaint supports an inference of adverse action. However, Magistrate Judge Katz noted that Plaintiff's allegations also support an inference that the misbehavior reports were justified. *See* Dkt. No. 42 at 25. Specifically, the Report-Recommendation observes that Plaintiff's amended complaint states he engaged in the conduct discussed in the misbehavior reports: altering the sink in his cell, hanging a sheet, and possessing a broken crochet hook. *See id.* at 25-26. It cites a Second Circuit decision for the proposition that a retaliation defendant "may evade liability" if it shows that it would have engaged in the challenged conduct regardless of the plaintiff's protected conduct. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003); *see* Dkt. No. 42 at 23. The defendant must make this showing "by a preponderance of the evidence[.]" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting

---

[6] The Court understands SHU to stand for "Special Housing Unit." *Tafari*, 714 F. Supp. 2d at 340.

*Mount Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Importantly, *Bennett* dealt with a summary judgment motion, not a motion to dismiss. *See Bennett*, 343 F.3d at 134.

Although Defendants argue that the misbehavior reports were legitimate, *see* Dkt. No. 38 at 8, discovery has not yet occurred. Therefore, it would be premature to conclude that Defendants have demonstrated by a preponderance of the evidence that they would have issued the misbehavior reports even absent any protected conduct. Moreover, Plaintiff's amended complaint alleges his reasons for engaging in some of the at-issue conduct. Plaintiff claims he stuck a pen cap into a pipe on his cell sink to stop a fountain-like leak that posed a flood risk. *See* Dkt. No. 15 at 6. He also claims he kept the broken crochet hook in compliance with a prison policy requiring him to return it before he could get a new one. *See id.* at 3. He alleges that Defendant Marren was aware of the crochet hook policy and that other inmates hung sheets in their cells without receiving misbehavior reports. *See id.* at 3-4, 12-13. To determine whether Defendants would have issued the misbehavior reports even absent Plaintiff's prayer grievance, further factfinding is necessary.

On *de novo* review, and with an eye toward the procedural posture of this motion and the special solicitude that Plaintiff is due, the Court reaches a different conclusion on the "adverse action" prong than what Magistrate Judge Katz recommended. Although the *Bennett* rule may be applicable after discovery, the Court determines that Plaintiff has plausibly pled adverse action by both Defendants at this juncture.

***b. Causation***

Through special solicitude, Magistrate Judge Katz recommended that this Court find the causation prong satisfied. *See* Dkt. No. 42 at 27. Defendants argue that Plaintiff failed to plead causation between his protected activity and the misbehavior reports because he relies on

allegations of monthslong gaps between the prayer grievance and the misbehavior reports. *See* Dkt. No. 29-1 at 15-16. Defendants also contend that Plaintiff alleges nothing else, besides a passing remark from Defendant Marren with little context, to suggest retaliatory animus. *See id.* at 16. In opposition, Plaintiff states that Defendants targeted him after he attained desirable employment and moved into a housing block under their supervision. *See* Dkt. No. 36 at 28.

"To satisfy the causal-connection prong of a retaliation claim, an inmate must show that the protected conduct was a substantial or motivating factor in the prison officials' decision to take action against the plaintiff." *Vega v. Artus*, 610 F. Supp. 2d 185, 207 (N.D.N.Y. 2009) (citation and internal quotation marks omitted). Several factors are relevant to this analysis, such as: "(1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation." *Id.* (citation and internal quotation marks omitted). The Second Circuit "'[has] held that the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation.'" *Walker v. Senecal*, 130 F.4th 291, 299 (2d Cir. 2025) (quoting *Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020)). However, in that context, the Second Circuit has also indicated that mere temporal proximity between the grievance and the misbehavior report—without more—is not enough to state a plausible retaliation claim. *See id.*

The Second Circuit has not imposed a strict limit on the temporal gap between protected activity and adverse action, but it has stated that they must be "close in time[.]" *Espinal*, 558 F.3d at 129 (citations omitted). Liberally construed, the amended complaint alleges that Plaintiff's protected conduct—the filing of the prayer grievance—occurred on or about August 29, 2023. *See* Dkt. No. 15 at 15. It also alleges that two of the challenged misbehavior reports were made

on or about February 16, 2024, and the third was made on or about March 11, 2024. *See id.* at 5, 7. Thus, the reports came approximately six months after the prayer grievance. In *Espinal*, the Second Circuit found that a six-month gap between the *pro se* incarcerated plaintiff's alleged protected activity and the alleged adverse action was sufficient to support an inference of retaliation. *See Espinal*, 558 F.3d at 129. Thus, especially under the liberal construction required for *pro se* pleadings, the temporal proximity factor weighs in favor of finding causation at the pleading stage.

For the other factors, Plaintiff's amended complaint states that he was found guilty of at least two disciplinary charges. *See* Dkt. No. 15 at 10. Otherwise, information surrounding his disciplinary record is limited at this stage. The amended complaint also appears to allege that at some point after Plaintiff grieved the earlier misbehavior reports and before the third report was issued, Defendant Marren told Plaintiff, "I will get you." *Id.* at 7. Although the circumstances surrounding that remark are not entirely clear, a liberal construction of this allegation suggests some inference of retaliatory animus. The Court therefore agrees with Magistrate Judge Katz that Plaintiff sufficiently pled causation as to Defendant Marren. As to Defendant Marshall, however, Plaintiff appears to rely solely on temporal proximity between his prayer grievance and the misbehavior report. The Court cannot discern any additional allegations that would support an inference of retaliatory animus by Defendant Marshall.

Accordingly, Defendants' partial motion to dismiss is granted as to Defendant Marshall and denied as to Defendant Marren. The Court respectfully adopts in part and rejects in part this portion of the Report-Recommendation.

**B. Motion to Appoint Counsel**

After the Report-Recommendation was filed, Plaintiff filed a single-page motion to appoint counsel. *See* Dkt. No. 43. Therein, Plaintiff states that another district court previously appointed *pro bono* counsel for him after his complaint survived a motion to dismiss. *See id.*

As Plaintiff acknowledges, there is no guaranteed right to counsel in civil actions. *See id.*; *Howard v. Schenectady Cnty. Sheriff Dep't*, No. 9:20-CV-264, 2020 WL 13909948, *7 (N.D.N.Y. Apr. 9, 2020) (citing *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986)). Moreover, "[t]here is no bright line test to be applied when a *pro se*, indigent civil litigant seeks appointment of counsel." *Howard*, 2020 WL 13909948, at *7 (citing *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997)). The Second Circuit has articulated the following guidelines:

> In deciding whether to appoint counsel, . . . the district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62. Ultimately, the decision of whether to appoint counsel is left to the Court's discretion. *See id.* at 60 (citation omitted).

Plaintiff has been granted *in forma pauperis* status, and some of his claims will proceed as the parties enter discovery. "However, the fact that [a p]laintiff's complaint survived [a] [m]otion to [d]ismiss—and is entering the discovery phase—does not guarantee appointment of counsel . . . ." *Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-3746, 2025 WL 2208727, *3 (S.D.N.Y. Aug. 4, 2025) (citing *Hodge*, 802 F.2d at 60). As for the other factors, Plaintiff has not suggested that he cannot investigate facts or present his case. Although it is possible conflicting evidence will eventually implicate the need for cross-examination, discovery has not yet opened,

and the extent of evidentiary conflicts or potentially complex issues is not yet clear. The Court therefore denies Plaintiff's motion without prejudice. He may renew his motion at a later time.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Magistrate Judge Katz's Report-Recommendation (Dkt. No. 42) is **ADOPTED in part** and **REJECTED in part**; and the Court further

**ORDERS** that Defendants' partial motion for summary judgment (Dkt. No. 29) is **DENIED without prejudice and with leave to renew at the completion of discovery**; and the Court further

**ORDERS** that Defendants' partial motion to dismiss (Dkt. No. 29) is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Plaintiff's First Amendment retaliation claim against Defendant Marren shall proceed, and Defendant Marren shall file an answer thereto; and the Court further

**ORDERS** that Plaintiff's First Amendment retaliation claim against Defendant Marshall is **DISMISSED**, and Defendant Marshall shall be terminated from this action; and the Court further

**ORDERS** that Plaintiff's motion to appoint counsel (Dkt. No. 43) is **DENIED without prejudice and with leave to renew**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 26, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge